[L. A. No. 723.   Department Two.—October 2, 1900.]

GEORGE HOLLOWAY, Appellant, v. PASADENA AND PA-
CIFIC RAILWAY COMPANY, Respondent.

NEGLIGENCE—JOLTING OF ELECTRIC-CAR—DEFECTIVE CATTLE-GUARD.—In
an action for damages for injury by being thrown from an
electric-car, evidence tending to show that the track was not
in proper repair at a cattle-guard rapidly crossed by the car,
which by a lurch or jerk threw plaintiff from the car to his
injury, is sufficient to enable the jury to infer negligence; and
it is error for the court to take the case from the jury.

ID.—CONTRIBUTORY NEGLIGENCE—CROWDED CAR—SITTING UPON PLAT-
FORM—QUESTIONS FOR JURY.—It is not contributory negligence, as
matter of law, for the plaintiff to sit upon the platform of a
crowded car, with his feet upon the step, from which position
he was jerked to the ground to his injury; but the question
is for the jury.   It is for the jury to determine whether or not
the defendant, by crowding the car, caused the plaintiff to
take such seat, and whether or not the seat was such as to en-
danger the life or safety of the plaintiff, provided the defendant
exercised due care.

APPEAL from a judgment of the Superior Court of Los
Angeles County and from an order denying a new trial.   Wal-
ter Van Dyke, Judge.

The facts are stated in the opinion of the court.

Simpson & Willett, for Appellant.

John D. Pope, for Respondent.

THE COURT.—This action was brought by plaintiff to ob-
tain a judgment against defendant for damages received by
plaintiff in falling or being thrown off of one of defendant's
electric-cars while said car was in motion.

At the close of the evidence the court directed the jury to
return a verdict for the defendant, and upon the verdict thus
returned judgment was entered.   This appeal is from the judg-
ment and from the order denying plaintiff's motion for a new
trial.   It appears from the evidence that on the twenty-fifth
day of November, 1897, the plaintiff was returning from Santa

CXXX. Cal.—12

Monica to Los Angeles on one of defendant's cars. The car was crowded, and plaintiff was seated on the front platform with his feet resting on the step. As the car ran over a certain cattle-guard near Rosedale Cemetery, on defendant's track, plaintiff fell or was thrown from the car and under it, so that one foot was crushed and the other badly injured. Plaintiff claims that his feet were caught by timbers extending upward from the trench or portion of the cattle-guard under the track. The timbers or steps forming a portion of the cattle-guard were four and a half inches below the step of the car. It is claimed in appellant's brief that there was substantial evidence of negligence on the part of defendant, and that it was the duty of the court to have allowed the case to go to the jury. In the complaint it is alleged that defendant was negligent in not providing a sufficient number of cars for the transportation of its passengers, in the operation of the cars upon which plaintiff was riding, in the construction of its cattle-guards, and in the construction and maintenance of its road. The evidence seems to have been principally confined to the allegation as to negligence in the maintenance of the road. The negligence in this respect is claimed to be that defendant's track had a loose joint or connection of the rails just west of the cattle-guard, so that a car passing over the joint would receive a severe jolt. The testimony on behalf of plaintiff was in substance as follows: The witness Collins testified: "For about two feet under, directly under where the joint of the rails were put each way, the ground was broken, so that when one would stand on the rail you could see the rail bend up and down. The car was going at a rapid gait, .... I should judge twenty miles an hour; all at once there was a severe jolt, and I felt Mr. Holloway's body sort of give a lurch back. He was pulled off the car and he went with—well, without any resistance. .... In connection with the jolt of the car there seemed to be a lurch sideways and a downward movement of the car."

The witness Allen testified "that the joint was about three feet and eight inches west of the cattle-guard; that at this place the rails of the track did not meet by nine-sixteenths of an inch, and underneath the joint the ground was broken so

that the weight of a man would cause the rail to move up and down, and that the track at this point was not in a safe and proper condition for travel. That there was a depression of five-eighths of an inch at this point distributed over a space of about eight feet. That the effect on a car passing that point at the speed of fifteen or twenty miles an hour would be to cause a jolt, and that the tendency of the car would be to go downward."

The witness Brunson testified "that the car was running very fast. It seemed to be behind time and trying to make up, and the car gave a jolt and off he went."

The witness Greely testified "that the seats were all full of people and the aisles of the car were full of people standing. . . . . That he noticed the jolt."

The witness Weyrick testified that the rails did not come quite together at the joint, that the ground was loose beneath the rail so that when you stepped on it the rail would give a little.

Plaintiff testified that he boarded the car at Santa Monica and obtained a seat. That he gave up his seat to a lady and sat down on the front platform, and that there were no seats on the platform for passengers. That his feet were on the step of the platform. That just prior to the time he went off the car "the car seemed to give a kind of a lunge, swinging the upper part of my body backward, and my feet went up. Something struck my right foot right hard and pulled me off the car. I fell off, the car ran over my feet."

Negligence of defendant was the basis of the plaintiff's cause of action and of his right to recover. It was the province of the judge to determine whether or not the evidence offered by plaintiff had any legal tendency to establish negligence, and it was for the jury to say, after weighing and considering all the evidence, whether or not the negligence had been sufficiently proven. If the evidence on the part of the plaintiff was such that the jury would have the right to infer negligence therefrom, the court did not have the right to usurp the functions of the jury and take the case from them. (*Bush v. Barnett,* 96 Cal. 202; *McCurrie v. Southern Pac. Co.,* 122 Cal. 560.)

In this case we think the evidence was such that the case should, upon proper instructions, have been sent to the jury. The evidence tended to show that the track was not in proper repair and that the plaintiff was thrown off the car by reason of the car giving a lurch or jerk as it passed over the defective joint. The evidence was not the most satisfactory, and it may be that in view of the evidence produced by defendant that the jury would not have found that the track was out of repair, or that the defendant was guilty of negligence. But it was the peculiar function of the jury to pass upon these questions. If the evidence were such that the jury would have no right to infer negligence, then the court would have been justified in taking the case from it. The test is this: Would the evidence on the part of the plaintiff be sufficient to sustain a verdict in his favor if such verdict had been rendered? Applying this test we think the evidence in the record would be sufficient to sustain a verdict for plaintiff. It is claimed that the evidence on the part of plaintiff shows that he was guilty of contributory negligence in taking a seat on the steps of the front platform. The evidence is such that it gives much color to defendant's contention, but we cannot say as a matter of law that the evidence shows such contributory negligence on the part of plaintiff as to preclude his recovery. The car was crowded with passengers. The plaintiff had taken a seat on the steps. Whether or not the defendant, by crowding its car, caused plaintiff to take such seat, and whether or not the seat was such as to endanger the life or safety of plaintiff, provided the defendant exercised due and proper care, were questions for the jury. If different inferences might be drawn from the evidence as to whether or not the plaintiff was guilty of contributory negligence, it was the province of the jury to determine such questions and draw such inferences.

The judgment and order are reversed and the cause remanded for a new trial.